# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHARLIE M. GATSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV414-065 |
| | ) | CR412-160 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Upon Charlie M. Gatson's motion for 28 U.S.C. § 2255 relief, this Court recommended dismissal based on his appellate and collateral attack waivers. CV414-065, doc. 3 at 4. The district judge agreed, doc. 7, and Gatson appealed. Doc. 8. The U.S. Department of Justice then altered its policy on waiver enforcement, so the Eleventh Circuit reversed and remanded. *Gatson v. United States*, 2015 WL 8732325 at * 1 (11th Cir. Dec. 15, 2015) ("[W]e will vacate and remand the judgment with instructions that the district court should consider as non-waived Gatson's claim that his attorney was constitutionally ineffective for not objecting to the application of the Armed Career Criminal Act [ACCA] at

his sentencing. We imply no view as to whether such a claim has any merit."). This issue has since been briefed, docs. 17, 21 & 22, so the Court now turns to *Gatson*'s ineffective assistance claim.[1]

# I. ANALYSIS

Gatson contends that his lawyer should have objected to two of the three prior convictions used to ACCA-enhance his sentence to 218 months, thereby blocking the ACCA enhancement. The ACCA:

> requires a minimum 15-year sentence when a defendant with three "violent felony" or "serious drug offense" convictions commits certain firearms offenses. 18 U.S.C. § 924(e). ACCA gives three definitions of "violent felony." First, § 924(e)(2)(B)(i) covers any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." This is known as the "elements clause." Second, § 924(e)(2)(B)(ii) covers any offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The first 9

---

[1] To prevail on this claim, Gatson:

> must show 'that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.' *Hollis v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 5847258 at * 1 (11th Cir. Oct. 8, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). '[P]erformance is deficient when it falls below an objective standard of reasonableness' and is 'outside the wide range of professionally competent assistance.' *Id.* And prejudice occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

*Murray v. United States*, 2015 WL 7069345 at * 2 (S.D. Ga. Nov. 12, 2015).

words of that subsection are called the "enumerated crimes clause," and the last 13 are called the "residual clause."[2]

*In re Robinson*, ___ F.3d ___, 2016 WL 1583616 at * 1 (11th Cir. April 19, 2016) (footnote added).

This Court ACCA-enhanced Gatson's sentence with his prior state convictions for burglary, robbery, and possession of marijuana in a prison with intent to distribute (PWID). Presentence Investigation Report (PSR) at 6-8; doc. 21 at 3; doc 22 at 1-3. He now concedes that the robbery conviction qualifies as an ACCA predicate, but not the burglary and PWID convictions -- the two he insists his lawyer should have fought. Doc. 1 at 4; doc. 2 at 3; *see also* PSR at 6-8 (advising ACCA enhancements based on those crimes); doc. 42 at 5 (Gatson's counsel stating no objection to that PSR; Gatson himself agreed). There can be no ineffective assistance finding, the Government contends, because the PWID and burglary convictions were properly used. Doc. 21 at 3.

---

[2]  The residual clause was just deemed unconstitutionally vague in *Johnson v. United States*, 576 U.S. ___, 135 S.Ct. 2551 (2015), but it was not used to enhance Gatson's sentence. And *Johnson* did "not call into question application of the Act to the four enumerated offenses, or the remainder of the [ACCA's] definitions of a violent felony." *Id.* at 2563; *Ginebra-Vera v. United States*, 2016 WL 1298387 at * 9 (S.D. Fla. Feb. 1, 2016). As will be shown below, the two predicate crimes that Gatson challenges here fall under the ACCA's "serious drug" clause and § 924(e)(2)(B)(ii) (any offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another").

### A. PWID Conviction

Gatson's guilty-plea-based PWID conviction (PSR at 7 ¶ 31) is a "serious drug offense" under the ACCA because marijuana is a controlled substance and he faced a maximum penalty of ten years' imprisonment.[3] *See* O.C.G.A. § 16-13-30(j)(2); s*ee also United States v. Bradley*, 566 F. App'x 868, 870 (11th Cir. 2014) (Georgia PWID conviction is a serious drug offense under the ACCA).

Gatson cites *Moncrieffe v. Holder*, ___ U.S. ___, 133 S.Ct. 1678 (2013), to contend that his PWID conviction violates *Descamps v. United States*, ___ U.S. ___, 133 S.Ct. 2276 (2013), and that it was simply not a serious offense. Plus, he claims he pled to lesser offenses than the PWID conviction, so counsel was ineffective for failing to object "to these [PWID and burglary] state priors." Doc. 22 at 3.

The record does not support Gatson's "pled to lesser offenses" assertion, and the PWID conviction in fact was a serious drug offense. *Bradley*, 566 F. App'x at 870. *Moncrieffe* does not assist him because it turned on the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*,

---

[3] Under 18 U.S.C. § 924(e)(2)(ii), a "serious drug offense" is "an offense under State law, involving . . . possessing with intent to . . . distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."

under which a noncitizen who has been convicted of an aggravated felony may be deported from this country and is prohibited from obtaining discretionary relief from removal from the Attorney General. *United States v. Dominguez-Rodriguez*, ___ F.3d ___, 2016 WL 1258400 at * 6 (6th Cir. Mar. 31, 2016). *Moncrieffe* thus "involved the meaning of 'illicit trafficking' in the Controlled Substances Act, which is not at issue in this case. The ACCA does not use the phrase 'illicit trafficking' in defining 'serious drug offense,' and there is no obvious reason why 'illicit trafficking' and 'serious drug offense' should have the same elements, particularly when Congress employed the two different terms in different contexts." *United States v. Warren*, 632 F. App'x 973, 975 (11th Cir. 2015).

Gatson also fails to explain how *Descamps*, which clarified how to determine whether a prior conviction is a violent felony, *Descamps*, 133 S. Ct. at 2281-82, invalidates the use of his PWID conviction. It follows that he cannot meet either the deficiency or prejudice prongs of *Strickland*, both of which are essential to support his ineffective assistance claim. *See* n. 1 *supra*.

## B. Burglary

That leaves the burglary conviction. Addressing it is not straightforward because, in sweeping prior convictions into its enhancement vortex, the ACCA lists "certain specific felonies that necessarily count as violent felonies (i.e., burglary, arson, and extortion), [but fails to] define those crimes, and there is a great deal of variation in how the several states define them." J. A. Roth, *The Divisibility of Crime*, 64 DUKE L. J. 95, 100 (Feb. 2015). To promote uniformity, accuracy and fairness in light of that variation, federal courts use specialized terms -- *e.g.*, "generic," "non-generic," "divisible" or "indivisible" -- in discussing whether a prior conviction's underlying state statute qualifies as an ACCA enumerated violent felony.[4]

In addition, they refer to the general "violent felony" descriptions in the ACCA and in federal common law as "generic" federal offenses, then apply "categorical" or "modified categorical" approaches to decide, for example, "whether a predicate offense of conviction qualifies as a generic federal offense." *United States v. Williams*, ___ F. Supp. 3d ___,

---

[4] Analyzing this area has become, one court recently remarked, a "Byzantine analytical framework that . . . leaves courts struggling to make sense out of the "hopeless tangle" the ACCA has become." *United States v. Mayer*, ___ F. Supp. 3d ___, 2016 WL 520967 at *12 (D. Or. Feb, 5, 2016).

2016 WL 1555696 at *3 (D. Me. Apr. 15, 2016) (citing *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276 (2013)). They do so to uphold ACCA's animating core: That "an ACCA violent felony must involve an element with some degree of force or constitute burglary, arson, extortion, or an explosives offense." *Mayer*, 2016 WL 520967 at * 1.

Further complicating this Court's task, Gatson was sentenced in 2012, and *Strickland* bans hindsight knowledge. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . ."). Courts apply that ban in ineffective assistance claim cases like this, though the results are not always consistent. *See Thomas v. United States*, 2014 WL 1477892 at * 6 (S.D. Ill. Apr. 15, 2014) ("[I]t was obviously not unreasonable for [§ 2255 movant's] counsel to not raise claims based on *Descamps* and [*Alleyne v. United States*, ___ U.S. ___,

133 S. Ct. 2151 (2013)[5]], because those cases would not be decided for another eight years.") (footnote added); *Petrillo v. United States*, ___ F. Supp. 3d ___, 2015 WL 7574744 at * 7 (D. Conn. Nov. 25, 2015) ("Because the Government acknowledges that the Guidelines may be unconstitutionally vague and because the Supreme Court recently held

---

[5] *Alleyne* is oft-cited by movants like *Gatson*, but it offers little succor in the ACCA enhancement context:

> *Alleyne* considered the general rule laid out in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. *Apprendi*, 530 U.S. at 490. As such, the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. *Id.* at 484. *Alleyne* held that the reasoning in *Apprendi* not only applied to "facts increasing the statutory maximum [sentence]," but also "to facts increasing the mandatory minimum." *Alleyne*, 133 S.Ct. at 2160, overruling *Harris v. United States*, 536 U.S. 545 (2002). However, "[i]n *Almendarez-Torres v. United States*, 523 U.S. 224, (1998), the Court held that the fact of a prior conviction need not be submitted to a jury and proved beyond a reasonable doubt to serve as the basis for enhancing a defendant's sentence." *United States v. Ridens*, 792 F.3d 1270, 1274 (10th Cir. 2015) (emphasis added). *Almendarez-Torres'* narrow exception to the general rule survived *Apprendi, see Apprendi*, 530 U.S. at 489-90, and *Alleyne* explicitly declined to revisit the question. *See Alleyne*, 133 S.Ct. at 2160 n. 1. Therefore, under *Alleyne*, the fact of a prior conviction is not required to be found beyond a reasonable doubt by a jury even though it would increase the mandatory minimum sentence.

*Tate v. United States*, 2016 WL 183529 at * 4 (D. Utah Jan. 14, 2016); *accord, United States v. Harris*, 741 F.3d 1245, 1249 (11th Cir. 2014) (mandatory life sentence imposed at sentencing for a serious violent felony, based on judicial factfinding that defendant had prior convictions for a combination of two or more serious violent felonies or serious drug offenses, did not violate the general Sixth Amendment right to jury trial on facts that increase a sentence; the fact of a prior conviction was not an "element" that had to be found by a jury). Hence, sentencing judges, as opposed to juries, can determine the nature of a prior conviction. *United States v. Jones*, 608 F. App'x 822, 828-829 (11th Cir. 2015), cited in *Ginebra-Vera*, 2016 WL 1298387 at * 8.

that language identical to [U.S.S.G.] § 4B1.2 is unconstitutionally vague, by the Government's own admission, if [the defendant] were sentenced today, he would not be sentenced as a career offender.").

The Court therefore will first review what those ACCA terms *currently* mean (this area is being heavily litigated), then apply them here -- while also honoring *Strickland's* hindsight ban. Hence, the Court will ask whether Gatson's predicate ACCA crime -- the underlying burglary statute on which he was convicted -- is "generic" or "non-generic." If it is generic, then the Court will apply the categorical approach. If it is non-generic, then it will determine whether the statute is divisible. If it is non-generic yet also divisible, the Court will apply the modified categorical approach to examine that conviction's documentation (what's known as a limited "*Shepherd*"[6] review) to determine whether the actual state court conviction otherwise matched the generic version of burglary, as contemplated by the ACCA. If it is

---

[6] "Those documents, known as *Shepard* documents, include the charging document, the plea agreement, the transcript of the colloquy between a judge and a defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information.' *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)." *United States v. Tendrich*, 2016 WL 519291 at * 1 (11th Cir. Feb. 10, 2016).

indivisible, then the burglary conviction cannot serve as a viable ACCA predicate at all. These terms warrant further explanation.

### 1. The Categorical Approach to Generic Statutes

Different states define underlying crimes of violence (like burglary) differently. But with the ACCA Congress wanted "burglary," as used in § 924(e), to "have some uniform definition independent of the labels employed by the various States' criminal codes." *Taylor*, 495 U.S. at 592. So it chose a generic, general approach "in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law." *Id.* at 590. Courts thus are to use the "categorical approach" to determine whether a prior crime qualifies as an ACCA predicate, *id.* at 600, and ensure that "defendants are not punished for facts that are not found beyond a reasonable doubt by a jury." *McDaniels*, 2015 WL 7455539 at * 2. This approach looks *only* to the underlying crime's statutory definitions -- the "elements" of that offense, and not to the particular facts underlying it (*i.e.*, the means by which the defendant committed the

crime) -- to resolve whether, for example a prior burglary conviction qualifies as an ACCA "crime of violence." *Descamps*, 133 S.Ct. at 2283.

Applying the categorical approach requires judges to compare the elements of the statute forming a prior conviction with the elements of the generic crime -- *i.e.*, the offense as commonly understood. Hence, a violent crime "qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281; *Jolly v. United States*, 2016 WL 1614409 at * 2 (W.D.N.C. Apr. 22, 2016). More specifically, "a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."[7] *Johnson v. United*

---

[7] This distinction is critical and nicely explains why this area of law has become so tediously complicated:

> ACCA increases the sentence of a defendant who has three "previous convictions" for a violent felony -- not a defendant who has thrice committed such a crime. 18 U.S.C. § 924(e)(1); *see Taylor*, 495 U.S., at 600, 110 S. Ct. 2143. That language shows, as *Taylor* explained, that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and *not* to the facts underlying the prior convictions." *Ibid.*; *see Shepard*, 544 U.S., at 19, 125 S. Ct. 1254. If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way. *See Nijhawan* [*v. Holder*], 557 U.S. [29, 36 (2009)] (construing an immigration statute as requiring a "'circumstance-specific,' not a 'categorical,'" approach). But in ACCA, *Taylor* found, Congress made a

*States*, ___ U.S. ___, 135 S.Ct. 2551, 2557 (2015) (quotes and cites omitted).  The conviction statute's "elements," not the means by which the defendant violated it, control.  *Descamps*, 133 S. Ct. at 2285-86. [8] So ["i]f a statute is generic -- if it requires that all of the elements of the generic ACCA crime be present before it is violated -- all convictions under the statute necessarily count as ACCA predicates and there is no need for further analysis." *United States v. Howard*, 742 F.3d 1334, 1345 (11th Cir. 2014).

---

deliberate decision to treat every conviction of a crime in the same manner: During the lengthy debate preceding the statute's enactment, "no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." 495 U.S., at 601, 110 S. Ct. 2143. Congress instead meant ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none.

*Descamps*, 133 S.Ct. at 2287.

[8]   Adding to the complexity -- there is now "a split among the federal circuits as to when [the statute undergirding the prior conviction] should be treated as divisible, stemming from whether the statute is construed as setting forth alternate *means* of committing a required element of the offense, or setting forth alternate *elements* of the offense." *Williams*, 2016 WL 1555696 at * 5 n. 8 (emphasis added) (citing *United States v. Mathis*, 786 F.3d 1068, 1075 n. 6 (8th Cir. 2015), *cert. granted*, ___ U.S. ___, 136 S. Ct. 894 (2016)); *see also* https://www.law.cornell.edu/supct/cert/15-6092 (the *Mathis* Court is asked to resolve whether "the 'modified categorical approach can be based only on the text of the state criminal statute as well as state court analysis of its elements, without regard to the court record or means necessary to accomplish an element"). Courts refer to this as the "elements versus means" issue. *See Lee v. United States*, 2016 WL 1464118 at * 7 (W.D.N.Y. Apr. 12, 2016).

Here, then, Gatson's prior burglary conviction must be shown to have the basic elements of generic burglary -- the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id*. at 2283 (citation omitted). The analysis in an ACCA case,

> is simple when a state's definition of burglary fits the "generic" definition of burglary. . . . In such cases, we apply the "categorical approach, which looks only at the elements of the statute under which the defendant was convicted." The inquiry ends if the definition tracks the generic definition.

*United States v. Ridens,* 792 F.3d 1270, 1272 (10th Cir. 2015) (cites omitted).

## 2. Modified Categorical Approach

Not all state criminal statutes, however, are "generic." Again,

> A prior burglary conviction is a "categorical" match if "its statutory definition substantially corresponds to 'generic' burglary" by including "the basic elements" of the generic offense. *Taylor*, 495 U.S. at 599, 602, 110 S.Ct. 2143. However, if the statute of conviction defines burglary "more broadly" and criminalizes conduct beyond the elements of the generic offense, *id*. at 599, 110 S.Ct. 2143, "a conviction under that law cannot count [categorically] as an ACCA predicate, even if the defendant actually committed the offense in its generic form." *Descamps*, 133 S.Ct. at 2283.

*Mayer*, 2016 WL 520967 at *3.

The Government concedes that the Georgia burglary statute used to convict Gatson, O.C.G.A. § 16-7-1, is *not* generic because "it sweeps more broadly . . . by prohibiting entries into cars, boats and the like." Doc. 21 at 4. The categorical approach cannot apply. In prior such cases this caused courts to develop the "modified categorical approach." As *Descamps* explained, *Taylor*

> recognized a "narrow range of cases" in which sentencing courts—applying what we would later dub the "modified categorical approach" -- may look beyond the statutory elements to "the charging paper and jury instructions" used in a case. *Id.*, at 602, 110 S. Ct. 2143. To explain when courts should resort to that approach, we hypothesized a statute with alternative elements—more particularly, a burglary statute (otherwise conforming to the generic crime) that prohibits "entry of an automobile as well as a building." *Ibid.* One of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not. In a typical case brought under the statute, the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly. So if the case involves entry into a building, the jury is "actually required to find all the elements of generic burglary," as the categorical approach demands. *Ibid.* But the statute alone does not disclose whether that has occurred. Because the statute is "divisible" -- i.e., comprises multiple, alternative versions of the crime -- a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary. Hence *Taylor* permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction.

*Descamps*, 133 S. Ct. at 2283-84 (footnote added).

*Descamps* thus addressed the problems that arose when the modified categorical approach was used on an underlying conviction based on an *in*divisible statute. The Supreme Court wound up holding

> that modified categorical review was permissible *only* when the prior conviction was pursuant to a "divisible" rather than an "indivisible" statute -- meaning that the statute explicitly set forth "alternative elements," -- some of which fell within the generic offense and others of which did not. An example of a divisible statute would be a statute specifying that a person committed an offense if he unlawfully possessed a "gun, knife, or ax." An indivisible version of the same offense would be a statute that used the broader term "weapon."

*Divisibility*, 64 DUKE L. J. at 101 (footnotes omitted). The Eleventh Circuit has put this all together:

> When a court does apply the modified categorical approach, the key is to "focus on the elements, rather than the facts," of the prior conviction. [*Descamps*, 133 S. Ct.] at 2285. The alternative elements in a divisible statute "effectively create[ ] 'several different . . . crimes.' " *Id.* (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41, 129 S.Ct. 2294, 2303, 174 L.Ed.2d 22 (2009)). And the modified categorical approach gives courts "a way to find out *which* [of those alternative crimes] the defendant was convicted of." *Id.* The approach allows a court to consider a limited class of court approved documents, including: charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. A court must not, however, consult those documents "to discover *what the defendant actually did*" and

then compare that conduct to the elements of the generic offense. *Descamps*, 133 S.Ct. at 2287. Instead, the documents must be examined only "to determine which statutory phrase," meaning which alternative element, "was the basis for the conviction." *Id.* at 2285 (quotation marks omitted). If the *Shepard* documents show that the defendant was found guilty under elements of a divisible statute that match the generic offense, instead of those that do not, the prior conviction is an ACCA predicate.

*United States v. Howard*, 742 F.3d 1334, 1347 (11th Cir. 2014) (quotes cites and footnote omitted; emphasis added); *accord, Mayer*, 2016 WL 520967 at * 3 ("a sentencing court cannot use the modified categorical approach "to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." *Descamps*, 133 S.Ct. at 2288. The focus is instead on whether the documents show that the elements of the generic offense were found by a jury or admitted by the defendant. *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143; *see also Shepard*, 544 U.S. at 20–21, 125 S.Ct. 1254.").

*Howard* examined Alabama's non-generic third-degree burglary statute, Alabama Code § 13A–7–7. It reminded that if a statute is "non-generic, we must determine whether it is divisible or indivisible." *Howard*, 742 F.3d at 1345. It ruled § 13A–7–7 indivisible because its "building" definition -- "[a]ny structure which

may be entered and utilized by persons for business, public use, lodging or the storage of goods" -- contained a "non-exhaustive list of things that fall under that definition" rather than "set[ting] out one or more elements of the offense in the alternative." *Id.* at 1348. The indivisibility disqualified Howard's prior convictions from constituting ACCA predicate burglary convictions. *Id.* at 1349.

To summarize thus far: This Court determines whether a prior conviction qualifies as an ACCA enumerated felony by comparing the elements of the generic offense to the elements of the prior conviction. *Descamps*, 133 S. Ct. at 2281-82; *Roberson v. United States*, 2015 WL 3827098 at * 6 (S.D. Ga. June 18, 2015). "A prior conviction qualifies as an ACCA predicate offense only if the elements of the prior conviction are the same or narrower than the elements of the ACCA predicate offense." *Roberson,* 2015 WL 3827098 at *6 (citing *Descamps*, 133 S.Ct. at 2281-82). "If the state statute is narrower than the generic view, *e.g.*, in cases of burglary convictions in common-law States or convictions of first-degree or aggravated burglary, there is no problem." *Taylor*, 495 U.S. at 599. "Because the ACCA does not specify the elements for the predicate offenses of burglary, arson, and extortion, courts apply the

elements of these 'generic' crimes as commonly understood." *Id.* They then thread the analysis through the above-detailed *"Descamps* filter" to ensure that the underlying crime was generic -- in which case, the categorical approach can be used -- or non-generic, in which case the modified categorical approach can be used,[9] but only if that conviction was based on a divisible statute -- divisible into elements that match generic burglary as required by *Descamps*, which held that indivisible statutes stop the ACCA train in its tracks. *Descamps*, 133 S.Ct. at 2287-88. Doing so upholds *Apprendi* concerns as well as the basic accuracy/uniformity protections noted above.

### 3. Gatson's Burglary Conviction

Gatson's burglary predicate passes the *Descamps* test. *Descamps* itself helps demonstrate that. Descamps had pled

> guilty to violating California Penal Code Ann. § 459 (West 2010), which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of

---

[9]  *See, e.g.*, *Tendrich*, 2016 WL 519291 at * 2 ("At the time Mr. Tendrich was convicted, Massachusetts had a divisible burglary statute that defined burglary more broadly than the generic definition of the crime, criminalizing unlawful entries into homes, watercraft, and motor vehicles. *See* Mass. Gen. Laws ch. 266, §§ 16 and 18. See also Descamps, 133 S.Ct. at 2284 (explaining that the Massachusetts burglary statute is divisible). Because the [otherwise non-generic] Massachusetts statute is divisible, we apply the modified categorical approach and resort to *Shepard* documents to determine whether the crimes for which Mr. Tendrich was convicted qualify as ACCA predicates.").

burglary." That statute does not require the entry to have been unlawful in the way most burglary laws do. Whereas burglary statutes generally demand breaking and entering or similar conduct, California's does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours. *See People v. Barry*, 94 Cal. 481, 483–484, 29 P. 1026, 1026–1027 (1892). In sweeping so widely, the state law goes beyond the normal, "generic" definition of burglary. According to Descamps, that asymmetry of offense elements precluded his conviction under § 459 from serving as an ACCA predicate, whether or not his own burglary involved an unlawful entry that could have satisfied the requirements of the generic crime.

*Descamps*, 133 S. Ct. 2282.

The sentencing court disagreed with Descamps and applied the modified categorical approach -- it examined the burglary's underlying documents and concluded that Descamps had "admitted the elements of a generic burglary." *Id.* (he had broken into a grocery store). The Ninth Circuit affirmed. *Id.* Reversing, the Supreme Court reminded that

the modified [categorical] approach serves a limited function: It helps effectuate the categorical analysis when a *divisible* statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under [the state burglary statute] into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense."

*Id.* at 2283.

The key analytical thread here is found in whether the state statute defines burglary alternatively, in a way that mirrors the elements of the generic offense and constitute separate "elements" that a jury must unanimously find (or to which the defendant has pled):

> Thus, to be considered "divisible," it is not enough for a statute to include alternative phrases or definitions that substantially correspond with the generic offense; the statutory alternatives must also mirror the elements of the generic offense and constitute separate "elements" that must be found unanimously by a jury under the relevant state law. *See Descamps*, 133 S.Ct. at 2296 (Alito, J., dissenting) (under the majority reasoning, a statute is divisible "only if the offense in question includes as separate elements all of the elements of the generic offense," elements "on which a jury must agree by the vote required to convict"); see also [*Almanza-Arenas v. Lynch*, 809 F.3d 515, 524 (9th Cir. 2015)] ("The means or methods of committing the element of the offense do not make [a] statute divisible, because the trier of fact does not need to agree" about the method or means in order to convict).

*Mayer*, 2016 WL 520967 at * 6.

Descamps himself was not convicted of a generic burglary because the state statute in his case failed to contain an unlawful-entry element. The record showed that at most he *committed* generic burglary, "and so hypothetically *could have* been convicted under a law criminalizing that conduct. But that is just what we said, in *Taylor* and elsewhere, is not enough." *Descamps*, 133 S. Ct. at 2287-88 (emphasis added). The flaw, then, was that the state statute in Descamp's case was *indivisible*. *Id.* at

2288-89 ("[B]ecause California, to get a conviction, need not prove that Descamps broke and entered -- a § 459 violation cannot serve as an ACCA predicate."). What a defendant *actually did* is irrelevant:

> Whether Descamps did break and enter makes no difference. And likewise, whether he ever admitted to breaking and entering is irrelevant. Our decisions authorize review of the plea colloquy or other approved extra-statutory documents *only* when a statute defines burglary not (as here) overbroadly, but instead *alternatively, with one statutory phrase corresponding to the generic crime and another not.* In that circumstance, a court may look to the additional documents to determine which of the statutory offenses (generic or non-generic) formed the basis of the defendant's conviction. But here no uncertainty of that kind exists, and so the categorical approach needs no help from its modified partner. We know Descamps' crime of conviction, and it does not correspond to the relevant generic offense. Under our prior decisions, the inquiry is over.

*Id.* at 2285-86.[10]

The burglary statute used against Gatson is non-generic but also divisible. As it existed at the time of his conviction, Georgia's burglary statute stated that:

---

[10]    This was consistent with *Apprendi* because "only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime." *Descamps*, 133 S. Ct. at 2290. "Divisible statutes, the Court reasoned, require the prosecution to proceed, and the fact-finder to enter a decision, in a manner that together renders transparent whether or not the defendant was convicted pursuant to a statutory alternative element falling within the generic version of the offense. Indivisible statutes, by contrast, do not require such focused allegations or deliberations." *Divisibility*, 64 DUKE L. J. at 107.

[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another *or* enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

O.C.G.A. § 16-7-1(b) (version in effect from 1980-2012) (emphasis added), quoted in *Fail v. United States*, 2016 WL 1658594 at * 3 (S.D. Ga. Mar. 23, 2016). That statute "is non-generic because it encompasses unlawful entry into vehicles, railroad cars, watercraft, and aircraft. [But it] is also divisible . . . because it sets out *alternative* ways to commit the crime, including the unauthorized entry into buildings, structures, vehicles, railroad cars, and watercraft. *Id.*" *Fail*, 2016 WL 1658594 at * 3 (cite omitted; emphasis added). In fact,

> [u]nlike the situation in *United States v. Lockett*, 810 F.3d 1262, 1268 (11th Cir. 2016), the Georgia burglary statute does not allow the prosecutor to charge a defendant with unauthorized entry into a "dwelling," the definition of which under South Carolina law *also includes* vehicles, watercraft, and aircraft. Rather . . . [Georgia] prosecutor[s] must pick which type of vehicle or structure the defendant unlawfully entered. *See Redfern v. State*, 246 Ga. App. 572, 574, 540 S.E.2d 701, 703 (2000) (stating government must prove defendant unlawfully entered a "building").

*Id.* (emphasis added); *see also Mayer*, 2016 WL 520967 at *11 ("[W]hen a statute includes all elements of the generic offense as alternatives (in

whatever form), the court looks to the approved judicial record to assess whether the defendant was convicted of the *alternative* matching the generic offense; *i.e.*, whether a jury necessarily found or a defendant necessarily admitted the elements of the generic offense. For example, in cases tried to a jury, 'if the indictment and jury instructions show that the defendant was charged only with burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.' *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143."); *see also id.* (for a guilty plea the court consults the closest analogs to jury instructions -- the plea colloquy, plea agreement, or a record of comparable findings of fact adopted by the defendant when he pleads -- to ensure that the plea ultimately rested on a generic statute) (citing *Shepard*, 544 U.S. at 21).

Applying the modified categorical approach (permissible because of the burglary statute's divisibility), and thus examining Gatson's *Shepherd* documents, the Court finds that Georgia indicted him for (and he pled guilty to) entering "the dwelling house of another" (a personal residence). Doc. 21-2 at 2. Too, Georgia law requires identification of the specific location of the burglary in both the indictment and the

verdict. *Morris v. State*, 166 Ga. App. 137, 139 (1983) ("[W]here the defendant is charged with burglary, the indictment must specify the location of the burglary, and contain some allegation regarding ownership of the burglarized premises."); doc. 21 at 5 n. 2 (collecting cases). The indictment and guilty plea achieved that in Gatson's burglary case. *See* doc. 21-2 at 2-8.

Because Gatson was convicted of generic burglary (as the modified categorical approach illuminated) under a divisible statute, his prior burglary offense qualified as an ACCA violent felony. So even if there was no issue regarding *Strickland's* hindsight ban, movant simply "has not demonstrated deficient performance or prejudice based on counsel's failure to challenge the career offender enhancement." *Harris v. United States*, 2016 WL 1588545 at * 7 (M.D. Fla. Apr. 21, 2016). His only claim (ineffective assistance) therefore fails on the merits.

## II. CONCLUSION

Charlie M. Gatson's § 2255 motion must therefore be **DENIED**. Doc. 1; *Ginebra-Vera*, 2016 WL 1298387 at * 11. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no

COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2254 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added).

**SO REPORTED AND RECOMMENDED,** this  19th  day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA